# MARY BUTLER v. UNITED RAILWAYS COMPANY, Appellant.

### Division Two, March 18, 1922.

**NEGLIGENCE: Humanitarian Rule: Demurrer to Evidence.**   Where plaintiff, an adult woman, intended to take passage on a street car, and for that purpose stood at a regular stopping place of such car, which was approaching her at the rate of twenty-five or thirty

miles an hour, and which she saw for eight hundred or nine hundred feet as it approached her, and, while waiting, she placed herself so near the track, upon which the car was running, that she was struck and injured by the car, which neither slackened its speed nor stopped, until it had run about three blocks after striking her, she was not entitled to recover under the humanitarian rule, inasmuch as she saw the car approaching and was not on the track or attempting to enter thereon, and it was her duty to move to a place of safety, whether the motorman saw her or not, and her failure to do so precluded a recovery.

Appeal from St. Louis City Circuit Court.—*Hon. Benjamin J. Klene*, Judge.

REVERSED.

*Chas. W. Bates, T. E. Francis* and *G. T. Priest* for appellant.

(1) The court erred in overruling defendant's demurrer to the evidence. The evidence conclusively shows that it was plaintiff's own act in lowering her umbrella, so as to cause the same to come in contact with the front end of the car, and thus she alone caused her injuries. (2) The demurrer should have been sustained on the ground that plaintiff was guilty of negligence which either directly contributed to or was the sole and proximate cause of her injuries, and therefore she was not entitled to recover. Tanner v. Railroad, 160 Mo. 497; State ex rel. v. Reynolds, 233 S. W. 219.

*Hamp Rothwell* and *Safford & Marsalek* for respondent.

The court properly overruled the demurrer to the evidence. (1) A demurrer to the evidence admits as true all evidence in plaintiff's favor and all inferences favorable to plaintiff which may, with any degree of propriety, be drawn therefrom, and in ruling thereon, the court cannot draw inferences in favor of defendant to counterbalance or overthrow inferences in favor of plain-

tiff. Troll v. Drayage Co., 254 Mo. 337; Scherer v. Bryant, 273 Mo. 602; Buesching v. Gaslight Co., 73 Mo. 219; Maginnis v. Railroad, 182 Mo. App. 694, 268 Mo. 667. (2) The court should sustain the demurrer only when the evidence and inferences to be drawn therefrom, considered in the light of the foregoing rule, are so strongly against the plaintiff as to leave no room for reasonable minds to differ. Gratiot v. Railroad, 116 Mo. 466; Steffens v. Fisher, 161 Mo. App. 393. (3) Defendant, in its answer, alleged that plaintiff's injuries were caused by her negligence in going in close and dangerous proximity to the track when she could have seen and heard the approaching car in time to have remained away from the track and thereby have averted the collision. This statement is a solmen admission by which defendant is bound. McKenzie v. U. Rys. Co., 216 Mo. 19; Lynch v. Railroad, 208 Mo. 19; Jewell v. Mfg. Co., 143 Mo. App. 210. (4) Plaintiff's alleged negligence in remaining near the track cannot defeat her right to recover under the humanitarian theory, because the negligence of defendant in failing to stop the car occurred after the plaintiff had placed herself in a position of danger and at a time when defendant, by exercising ordinary care, might have discovered her danger and averted the accident. Bunyan v. Railway, 127 Mo. 19; Fidler v. Railroad, 107 Mo. 645; Werner v. Citizens Ry. Co., 81 Mo. 374; Everett v. Railroad, 214 Mo. 54; Coasting Co. v. Tolson, 139 U. S. 551. (5) The motorman had no right to permit his car to continue running toward the plaintiff at a high rate of speed on the assumption that she would escape from her position of danger when her actions would have made it plainly apparent to him that she was expecting the car to stop and was making no effort to get out of its path. Kinlen v. Railroad, 216 Mo. 159; Eckhart v. Transit Co., 190 Mo. 618; Johnson v. Traction Co., 176 189; McKenzie v. U. Rys. Co., 216 Mo. 23; Shafstette v. Railroad, 175 Mo. 142; Ellis v. Railroad, 234 Mo. 680-1; Dutcher v. Railroad, 241 Mo. 162-3. (6) When the motorman is operating his car in an unlawful manner, he

has no right to assume that a person on the street whose safety is endangered by his unlawful conduct will save himself by exercising ordinary care to remain in or get to a place of safety. Powers v. Transit Co., 202 Mo. 269, 283; Gordon v. Railroad, 153 Mo. App. 565-6; Blyston-Spencer v. Ry. Co., 152 Mo. App. 137-8. (7) Under the ordinance introduced in evidence, the motorman was required to stop his car upon plaintiff's signal or request. In the absence of evidence, the law will presume that his failure to stop was due to the fact that he did not see plaintiff, as it cannot be presumed that he deliberately violated the ordinance. Defendant's theory—that the motorman assumed that plaintiff would get out of the way, and did not stop for that reason—cannot be considered, because it is without foundation in the facts, and would permit defendant to urge its breach of the law as a defense to plaintiff's action. Hale v. Ry. Co., 230 S. W. 119; Reno v. Railroad, 180 Mo. 482; Bergman v. Railroad, 88 Mo. 678. (8) The fact that the motorman did not see the plaintiff will not exonerate defendant from liability. Ellis v. Railroad, 234 Mo. 673; Waddell v. Railroad, 213 Mo. 16; McQuade v. Railroad, 200 Mo. 158; Hilz v. Railroad, 101 Mo. 53; Eskridge v. Railway, 170 Mo. App. 548; Gilbert v. Railway, 226 S. W. 264.

RAILEY, C.—This is an action for damages, alleged to have been sustained by plaintiff on account of her having been struck, by one of defendant's cars, while she was waiting to become a passenger thereon, at the southwest corner of Oakland and Macklind Avenues, in St. Louis, Missouri.

The evidence tends to show that on May 21, 1917, plaintiff, then fifty-four years of age, went to the usual stopping place, at the corner of Oakland and Macklind Avenues, in the city aforesaid, about six oclock p. m., for the purpose of boarding one of defendant's east-bound cars on Oakland Avenue. Defendant maintained at the above point two tracks, running east and west.

Cars bound west passed over the north track, and those traveling east used the south track. Neither of said avenues near the junction aforesaid had been improved by the city, but were public thoroughfares. There was no regular improved sidewalk where the accident occurred, but cinders had been placed along the south side of the south track aforesaid, and upon which plaintiff was struck and injured as hereafter stated.

At the time of the accident, a heavy rain was falling and it was dark. West of Macklind Avenue the tracks ran slightly up grade to the Forest Park Highlands' entrance. The top of the hill was about two blocks or eight or nine hundred feet west from Macklind Avenue. A car approached from the west traveling twenty-five or thirty miles per hour. Plaintiff testified that she was standing on the cinder walk at a place which she considered was a safe distance from the track; that she had her umbrella raised over her head for protection from the pouring rain; that she never noticed any other people in this vicinity, except a colored man; that she saw the street car, which struck her, from the time it left the above entrance at Forest Park Highlands, until it got close to her; that said car had a headlight and was illuminated; that she just stood there waiting for the car to come; that from the time she first saw the car, until she was struck, she did not move to either the north or south; that when she first saw the car coming, she walked a little further west on the cinder path to the place where she expected to get on; that she thought the car would stop for her and raised her hand to pull down the umbrella, but could not say whether she got it down before being struck; that she gave a signal indicating her desire to board the car by raising her hand; that she was then struck by the car all down her left side and rendered unconscious.

On cross-examination, she testified that while standing on the cinder path she saw a colored man in a little shanty by the side of the fence; that he was back of her, and she turned and faced the tracks; that the locality

where the accident occurred was not inhabited; that she did not see any one else there but the colored man; that she could see the car tracks and knew where they were while standing there; that she was looking at the car all the time, after it came over the hill. She further testified as follows:

"Q. And how close was it to you when you took your eyes off it? A. I don't know as I took my eyes off it. I was watching that car, and when it came near enough to get on I signaled the car then, and put up my hand to lower my umbrella too."

She further testified that when she raised her hand to signal the motorman, the car was then pretty close to her; that when she started to lower her umbrella the car was from ten to twenty feet away. She further testified:

"Q. And was it about that time that you raised your hand to the motorman, indicating that you wanted the car to stop? A. I raised my hand when I knew that he could see me.

"Q. Was it about that time? A. Yes, sir; and then I began to lower my umbrella to get on the car.

"Q. So you saw this car up to the time it was ten or twenty feet away from you? A. Yes. . . .

"Q. But I understood you to say that when the car was ten or twenty feet from you, you started to lower your umbrella? A. Yes, sir."

Mrs. Bessie Tieman testified in behalf of plaintiff, that she was a passenger on the car which injured respondent and was occupying the third seat from the front; that she saw plaintiff "just before the car hit her; that while plaintiff was standing there holding her umbrella she (witness) saw plaintiff about one-half block away. Witness further testified:

"Q. As the car approached Mrs. Butler, standing there beside the track, did she at any time before the car struck her, move to the north or south? A. No, sir."
She said the car ran about three blocks east after striking plaintiff before it stopped.

Butler v. United Railways Co.

On cross-examination witness testified that she saw plaintiff just before the car struck her. She further testified:

"Q. Was that the first time you saw her? A. Yes, sir.

"Q. That would be within a few feet of her? A. Yes, sir."

Edward Ross testified in behalf of plaintiff, that he was waiting near where plaintiff stood to take the car which injured her; that as the car approached plaintiff, she lowered her umbrella; that when he first saw plaintiff, "she was standing about two or three feet from the track;" that he did not think plaintiff moved from the first time he saw her until she was struck by the car; that he did not see her move; that she was struck with the corner of the car and knocked up on the embankment; that it was the southeast, or right-hand corner, of the car which struck her; that it knocked her about ten or twelve feet.

On cross-examination, witness testified, that he was standing about six or seven feet from plaintiff; that when she started to lower her umbrella the car was pretty close to her.

W. P. Smith, in behalf of plaintiff, testified as an expert, that the car in question traveling twenty-five miles per hour could have been stopped in about ninety to ninety-five feet; that going thirty miles per hour, it could have been stopped in about one hundred and thirty to one hundred and thirty-five feet.

It was admitted by defendant that its cars usually stopped at the junction of said avenues, at the southwest corner for passengers going east.

Over the objection of defendant the court admitted in evidence the second section of Ordinance 2386 of the city of St. Louis, which reads as follows:

"It shall be the duty of every driver, motorman, gripman, or other servant running any car to bring his car to a full stop at the corner of the streets as herein provided, whenever requested, signaled or motioned by

any person standing on such appropriate corner desiring to board such car.˙ . . . And in every instance such car shall remain stationary for a sufficient length of time to enable passengers safely to board or leave the car; provided, that a car in which there are no unoccupied seats need not stop to receive passengers when such passengers may board a succeeding car which is at the time within three hundred feet of the first car and bound over the same route throughout.''

Speed ordinance of said city, numbered 2381, was offered in evidence by plaintiff, which fixed the speed limit in one part of the city at ten miles, and in the other portion of said city at fifteen miles per hour.

At the conclusion of plaintiff's evidence, defendant interposed a demurrer thereto, which was overruled. Appellant stood upon 'said demurrer, and declined to offer any evidence in the case.

The instructions and rulings of the court will be considered, as far as necessary, in the opinion. The jury returned a verdict in favor of plaintiff for $15,000 and judgment was entered accordingly. Appellant, in due time, filed its motion for a new trial, which was overruled, and the cause duly appealed by it to this court.

I. The case is here upon appellant's demurrer to the evidence. The facts relating to the merits of the controversy are set out very fully in the foregoing statement, and will only be referred to again in a general way, as occasion may require.

**Humanitarian Rule.**

Plaintiff, in her statement of the case, avers that it was submitted to the jury under the humanitarian rule charged in petition, to-wit:

''That plaintiff was in a position of imminent danger and peril near defendant's track, where she was likely to be struck by the approaching car, and that she was oblivious to her said danger; that defendant, by exercising ordinary care, could have known of plaintiff's danger and of her obliviousness thereto in time to have averted her injury by exercising ordinary care to stop said car, but negligently failed to do so.''

No other issues was submitted to the jury, except that relating to the damages claimed. Said instruction undertook to cover the whole case, and authorized a recovery regardless of plaintiff's negligence.

Respondent testified that when she stopped on the cinder path at the junction of Oakland and Macklind Avenues to take the east-bound car on the south track, about six o'clock p. m. on May 21, 1917, it was pouring rain and she had her umbrella raised for protection; that she stopped at a place she considered a safe distance from the track, and remained there without moving, while said car ran 800 or 900 feet and struck her; that the car was illuminated, and she saw it while traveling the above distance, until it came within about twenty feet of her; that she then signaled the motorman to stop the car, by raising her hand; that she thereafter attempted to lower her umbrella, and was struck by the car on the left side of her head, body, etc.

The evidence tends to show that the car was traveling from twenty-five to thirty miles per hour, and ran several blocks before stopping; that while traveling twenty-five miles per hour, it could have been stopped in ninety-five feet; that in traveling thirty miles per hour, it could have been stopped in one hundred and thirty to one hundred and thirty-five feet.

Mr. Ross testified that plaintiff stopped on the cinder path about two or three feet from the track, and he thought she did not move before being struck. Mrs. Tieman, who was a passenger on said car, testified that she saw plaintiff with her umbrella when they got within a few feet of her. Ross said he was standing about six feet from plaintiff, and saw her with the umbrella, but neither Mrs. Tieman nor Ross testified that plaintiff gave the motorman a signal to stop the car. It is not claimed that plaintiff was on the track, or that she was about to enter thereon. It is insisted in respondent's brief, that she never moved from the above position, until struck by the car, although she saw it approaching for 800 or 900

State v. Wieners, 66 Mo. 29; State v. Buchler, 103 Mo.

feet. Her danger was from the approaching car, and no other source.

On the foregoing facts, we are of the opinion that plaintiff is not entitled to recover, because she saw the car approaching, and was neither on the track, nor attempting to enter thereon. Under such circumstances there can be no recovery under the humanitarian rule. [State ex rel. St. Louis-San Francisco Ry. Co. v. Reynolds, 233 S. W. (Mo.) l. c. 22; Reeves v. Railroad, 251 Mo. l. c. 177-8; Pope v. Railroad, 242 Mo. l. c. 238-9, 240; Kinlen v. Railroad, 216 Mo. l. c. 164.]

In Reeves v. Railroad, supra, Mrs. Cozby undertook to cross the railroad track in front of a moving train, operated at a dangerous rate of speed, in violation of a city ordinance, and was killed. Defendant insisted that there could be no recovery in the case, on account of the negligence of Mrs. Cozby. Respondent contended that defendant was liable under the humanitarian doctrine. In disposing of the case, we said:

"This is not a case where the humanitarian doctrine can be applied, because the deceased was aware of the approaching train. That doctrine often does apply where the engineer of a train sees a pedestrian standing or walking upon the track and apparently oblivious to the impending danger, or where children are seen on or approaching a railroad track."

In Pope v. Railroad, 242 Mo. l. c. 239, 240, we cited, with approval, a quotation from our opinion in Kinlen v. Railroad, 216 Mo. l. c. 164, as follows:

"The humanitarian doctrine only applies and authorizes a recovery where the injured party is ignorant or oblivious to the impending danger; but if he knew of the approaching danger, then clearly he would be guilty of such contributory negligence as would prevent a recovery whatever the conduct of the agents in charge of the train might be."

In State ex rel. v. Reynolds, 233 S. W. l. c. 220, the record of the St. Louis Court of Appeals was brought before the Court in Banc on *certiorari*, in the case of Mar-

tin v. St. Louis- San Francisco Ry. Co., wherein plaintiff recovered a judgment for $5,000 on account of the killing of his wife. GRAVES, J., in an able and exhaustive review of the law and facts in said case, at page 222, said:

"Her duty" (speaking of plaintiff's wife) "was to see just where the moving engine was, and the rate of its speed, before she attempted to cross the track. This because, as the Court of Appeals finds, she knew the train was coming. She, with knowledge of the fact of the approaching train, was not oblivious of her danger."

The only danger which plaintiff encountered in this case was from contact with defendant's car. She confessedly knew of its approach and, hence, has no standing in court under the humanitarian rule, based on the facts aforesaid.

II. As plaintiff was watching the car, as it approached for 800 or 900 feet before it struck her, the motorman would have been justified, if he saw her, in assuming she would move to a place of safety upon the approach of the car, if she was standing too close to the track. [State ex rel. v. Reynolds, 233 S. W. (Mo.) 1. c. 222-3; Reeves v. Railroad, 251 Mo. 1. c. 178; Pope v. Railroad, 242 Mo. 1. c. 240; Davies v. Ry. Co., 159 Mo. 1. c. 5, 6, 7; Boyd v. Ry. Co., 105 Mo. 1. c. 381.]

*Assuming Safe Place.*

In Davies v. Ry. Co., 159 Mo. 1. c. 5, the facts were as follows:

"At the time of the accident the plaintiff was standing with his back to the approaching car, and prying up the end of a beam while his assistants were fastening the hoisting apparatus around it. He did not see or hear the car, and the parties in charge of it failed to check its speed or to ring a bell, or give any warning whatever of its approach."

On page 6, after considering the above, with other facts, the court in disposing of the case, said:

"Under these facts what was there for the determination of the jury that the case should have been sub-

mitted to it? Certainly it must go by the saying, that the voluntary assuming of a position upon or so near to the tracks of a street railway, over which cars are run every few minutes, that they cannot pass without inflicting an injury to the party so positioned, unless the intervention of some independent agency occurs to prevent it, is an act in itself of the grossest negligence. . . . The plaintiff had no right to assume a place of danger upon defendant's tracks and deilberately engage in an undertaking in such a manner as to deprive himself of the benefit of the sense of sight and hearing, the common avenues through which the approach of danger is communicated, and trust that defendant's agents in the course of their employment would be more considerate and watchful for his safety than he himself.''

A judgment in favor of plaintiff was reversed without remanding.

In State ex rel. v. Reynolds, 233 S. W. l. c. 223, GRAVES, J., said:

''The Boyd Case ruled that the danger zone was the railroad track, and further ruled that, although the engineer saw Boyd running toward the depot, the engineer had the right to assume that he would check his progress before going upon the railroad track. We also then ruled that the plaintiff's evidence did not make a case for the jury upon the humanitarian rule, or any other rule, and reversed the judgment for plaintiff which was rendered under her instruction covering the humanitarian rule.''

Numerous authorities are cited in support of above proposition.

Plaintiff's counsel undertake to meet the force of foregoing authorities by suggesting that the motorman never saw plaintiff, or he would have stopped the car on her signal. As plaintiff was aware of the approach of the car, the motorman was justified in assuming, if he saw her, that she would move to a place of safety, if she was too close to the track for the car to pass without striking her. It cannot be presumed in this case, that

the motorman failed to see the plaintiff standing by the side of the track, as the car was lighted and Mrs. Tieman saw her, while she (witness) was occupying a seat in the rear of the motorman. It was his duty to be on the lookout for people who desired to take passage on his car and, in the absence of evidence on the subject, it cannot be presumed that he failed to do his duty. In addition to foregoing, Mrs. Tieman and Mr. Ross, who saw plaintiff with her umbrella, in describing what they witnessed, failed to testify that plaintiff gave the motorman any signal to stop the car. If any presumption can be indulged either way, it would be upon the theory, that the motorman saw the plaintiff, but did not see her give any signal to stop.

Plaintiff's humanitarian instruction, on which she recovered a verdict, did not submit to the jury the issue, as to whether the motorman actually saw plaintiff near the track as he passed with the car, but authorized the jury to find for her, under the humanitarian rule, if the motorman in the exercise of ordinary care, could have seen plaintiff near the track, in peril of being struck by the passing car, while she was oblivious to the danger, in time to have stopped the car and avoided the injury. She saw the car approaching, and was not on the track or attempting to move in that direction. It was her duty to move to a place of safety under such circumstances, whether the motorman saw her or not, and a failure to do so, precludes a recovery under the humanitarian rule.

III.  Respondent at the trial abandoned all the charges of negligence in the petition, except **Excessive Speed.** that relating to the humanitarian doctrine, and the case was submitted to the jury on this issue alone.

The second section of Ordinance 2386, pleaded in petition, and offered in evidence by plaintiff, required the motorman to stop the car on her signal. Plaintiff testified that when the car was in about twenty feet of her she signaled the motorman to stop, by raising her

hand.  The car at that time was traveling twenty-five or thirty miles per hour, and according to the testimony of Smith, plaintiff's expert witness, could not have been stopped in less than ninety feet.  At the time this signal to stop was given, the plaintiff was several inches too close to the track, and she alone could then have avoided a collision with the car by promptly moving to a place of safety.  She knew it was coming, and that the front part of the car must pass her, before she could take passage thereon.

In view of the foregoing physical facts, there could be no recovery under the humanitarian rule.

IV.  We are of the opinion that where an adult, like plaintiff, goes to a railroad station, and with actual notice that a car or train is approaching, voluntarily assumes a position on the platform too near the track to permit said car or train to pass without striking her, the motorman or engineer can proceed with the car or train, on the theory, that she will move to a place of safety.  If an injury is sustained under such circumstances, there can be no recovery of damages, under the humanitarian rule.

*Actual Notice.*

V.  In State ex rel. v. Reynolds, 233 S. W. l. c. 219 and following, the principles of law, applicable to this case, have been so thoroughly considered in Banc, that we do not deem it necessary to extend this opinion further.  We have carefully read, and fully considered, all the authorities cited in respondent's brief.  Some relate to accidents on the tracks.  Some relate to accidents where the injured party was either leaving or attempting to enter upon the tracks, and some relate to injuries inflicted on infants who are powerless to protect themselves.  We are not cited, however, to any case authorizing a recovery under the humanitarian rule, where the plaintiff, as in this case, had actual notice of the approach of the car, and was not on the track or attempting to go thereon, but voluntarily occupied a position several inches too close to the track, and was

*Conclusion.*

thus injured by reason of her own negligence and care-lessness.

We are of the opinion that, on the facts presented in this record, the plaintiff is not entitled to recover. The judgment below is accordingly reversed. *White* and *Reeves, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.