248 S.W.2d 597 (1952)
KELLEY
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 42533.
Supreme Court of Missouri, Division No. 2.
April 14, 1952.
Motion for Rehearing or to Transfer to Denied May 12, 1952.
Mattingly, Boas & Richards and Lloyd E. Boas, St. Louis, for appellant.
Michael B. Gershenson, St. Louis, for respondent.
Motion for Rehearing or to Transfer to Court en Banc Denied May 12, 1952.
BOHLING, Commissioner.
The St. Louis Public Service Company, a corporation (defendant), appeals from a judgment for $8,000 in favor of Pearl M. *598 Kelley (plaintiff) for personal injuries sustained while standing on the sidewalk near a curve in defendant's tracks when struck by the left rear side of one of defendant's streetcars which extended over onto the sidewalk in going around the curve. Plaintiff charged defendant was guilty of primary negligence and negligence under the humanitarian doctrine. She predicated a recovery solely on defendant's humanitarian duty to warn or to stop. Defendant contends that plaintiff failed to make a submissible humanitarian case; that error was committed in the giving and refusing of instructions, in the admission of evidence, and in overruling defendant's objections to prejudicial argument; and that the judgment is grossly excessive.
The accident happened at defendant's "South Side Loop" for its Broadway cars, located about 8600 South Broadway, St. Louis, Missouri, at about 6:07 p. m. on July 20, 1949. It was daylight and the weather was dry. Defendant's southbound Broadway streetcars turn left into the loop, entering at the south, travel east for a short distance, thence north, thence back west to Broadway, where they turn right and proceed north on Broadway. The curve or turn to the north for a car coming out of the loop was at the sidewalk and caused the rear end of an old type car, known as the Peter Witt streetcar, to swing out from the south rail of the track approximately five feet to the south and over the sidewalk.
Plaintiff, a woman 41 years old, worked about one-half block south and lived about one-half block north of the loop. Plaintiff was walking home on the east sidewalk of Broadway after work on the evening in question. She passed the tracks at the south end of the loop and, as she came to the north tracks, she noticed a streetcar, practically around the bend, proceeding west on the north tracks toward her. The car was a Peter Witt streetcar and had no passengers. She stopped on the sidewalk about 3½ feet from the south rail of said north tracks and waited for the streetcar to pass. It was approximately 78 feet along the track westwardly from the curve at the back of the loop to where plaintiff was standing on the sidewalk. She did not walk up there after the front end of the streetcar had passed. She was facing north, with her head turned toward the east, watching the streetcar. She was standing looking north before she was struck. The front end and the biggest part of the streetcar had passed her (we understand the front end of the streetcar was out in the street approximately 50 feet) when the left rear side of the streetcar as it passed over the curve in the tracks at the sidewalk swung out from the rail and struck and injured her. There was no warning by gong or otherwise from the streetcar and it proceeded around the curve and north on Broadway without slackening speed or stopping.
Defendant had painted "yellow warning" lines along the sidewalk marking the overswing of the streetcars as they rounded the curve. Plaintiff passed over the place of the accident frequently, had seen these markings, and knew that the back end of the streetcars would swing out as they went around the loop. Plaintiff testified that, if there were any marks there the day she was injured, she did not see them, and that she did not realize she was in danger. There was testimony that the marks had been repainted about two days before plaintiff was injured, but there was other testimony that on the night of the accident the marks were covered with dust and dirt and the repainting occurred after plaintiff was injured.
Plaintiff proved that the streetcar was traveling 8 to 10 miles an hour and could have been stopped in 25 to 30 feet at 10 miles an hour. A motorman testified that in going out of the loop the speed would not exceed 3 to 5 miles an hour.
Plaintiff's charge of primary negligence was a violation of the vigilant watch ordinance of St. Louis which requires motormen to maintain a vigilant watch and to stop in the shortest time and space possible upon the first appearance of danger. A number of defendant's motormen testified that had they seen a woman in plaintiff's position as they approached on the westbound track they would have warned her by sounding a gong, "hollering" at her, *599 waving or chasing her out of the way, or would have stopped the car in time to have avoided striking her.
The testimony for defendant was that no motorman saw plaintiff at the time and place in question.
Defendant claims error in the overruling of its motion for a directed verdict. Defendant says there was no showing that plaintiff's demeanor was such as to indicate she was in a position of imminent peril in time for the motorman to have stopped or warned plaintiff and avoided the collision; and, in the circumstances, that the motorman was entitled to assume plaintiff was paying reasonable attention to her surroundings and, having the present ability (by stepping back) to easily avoid the danger if cognizant of it, would avoid the danger, until the motorman had reason to suspect the contrary, and that he had no reason to realize plaintiff was inattentive and, therefore, in peril. Womack v. Missouri Pac. R. Co., 337 Mo. 1160, 88 S.W. 2d 368, 371[6]; Wilkerson v. St. Louis Pub. Service Co., Mo.Sup., 243 S.W.2d 953, 955; Clark v. Atchison T. & S. F. R. Co., 319 Mo. 865, 6 S.W.2d 954, 960[16]; Bean v. St. Louis Pub. Service Co., Mo. App., 233 S.W.2d 782, 787[10]; Butler v. United Rys. Co., 293 Mo. 259, 238 S.W. 1077, 1081[4]. Defendant's cases involved factual situations of apparent and known danger to a reasonably attentive plaintiff. The Restatement of Law of Torts, § 480, p. 1259, quoted in the Womack case, states that a reasonable chance "that the plaintiff will not discover his peril is enough to require the defendant to make a reasonable effort to avoid injuring him."
The facts of defendant's cases and of the instant case differ. We have said the danger from the outward swing of the rear end of a streetcar rounding a curve is a lurking or hidden danger and "the motorman has no right to assume * * * that in the presence of a hidden danger a person of ordinary prudence would be presumed to step back to avoid injury." State ex rel. Siegel v. Daues, Banc, 318 Mo. 256, 300 S.W. 272, 274, quashing Siegel v. Wells, Mo.App., 287 S.W. 775, 776, which applied the principle here urged by defendant in similar circumstances. For other humanitarian submissions see Robinson v. Kansas City Pub. Serv. Co., 345 Mo. 764, 137 S.W.2d 548; Flynn v. Kansas City Rys. Co., Mo.App., 226 S.W. 974; and for submissions of primary negligence see Laurent v. United Rys. Co., Banc, Mo.Sup., 191 S.W. 992; Rabushka v. Wells, Mo.App., 22 S.W.2d 870. Defendant's motorman, although stationed at the front end of the car, was in charge of the whole of the streetcar and under the facts of record the jury could find he knew or should have known that plaintiff was within the path of the outward swing of the rear of the car as it proceeded along the curve across the sidewalk. Dutcher v. Wabash R. Co., 241 Mo. 137, 165, 145 S.W. 63, 70, states: "Care to be due requires that alarm signals be given when they would be effective. And due care requires that the attempt to stop should be made, as a last resort, when it would be effective; for, if defendant owed any duty to stop at all, that duty must begin when it amounts to something worth while," Plaintiff made a submissible humanitarian case on defendant's duty to stop and we also think defendant's duty to warn under the humanitarian rule was a fact issue for the jury.
A plaintiff's contributory negligence in similar cases would generally be a question for the jury. The Laurent and Rabushka cases, supra. We may not say that plaintiff, although she knew the rear end of the car would swing out, was aware of the danger of her position and is to be deprived of her humanitarian submission on the ground the motorman could assume she would step back sufficiently far to avoid injury. The testimony of defendant's motormen does not warrant the assumption. The inquiry is: Was defendant negligent?
Plaintiff's verdict directing instruction read in part:
"The court instructs the jury that if you find and believe from the evidence that at the place referred to in the evidence the track of the defendant crossed the sidewalk and turned north into Broadway, and if you further find * * * that the rear end of streetcars in making the turn extended *600 out dangerously beyond the rails and over the sidewalk, if so, and that * * plaintiff was upon the sidewalk and standing in close proximity to the streetcar track and that defendant * * * operated a streetcar at said time and place across the sidewalk and if you further find * * * that at said time plaintiff was in a position of imminent peril of being struck by the overhang of said streetcar, if the same proceeded into and upon the curved track, and that the streetcar in question proceeded on and the rear end thereof extended beyond the rail and struck the plaintiff, if you so find, and that plaintiff was oblivious to her danger, if any, and if you further find" that defendant's motorman saw or by the exercise of ordinary care could have seen plaintiff's imminent peril of being struck by the rear overhang of said streetcar, and her obliviousness, in time thereafter in the exercise of ordinary care to have stopped said streetcar or to have given a timely and adequate warning to plaintiff, and avoided injuring plaintiff; "and if you further find that * * * [defendant's motorman] did fail to stop or give a timely and adequate warning under the circumstances, and that said plaintiff was injured and damaged as a direct result of said failure or failures, if any, then your verdict will be in favor of plaintiff * * *," even though plaintiff was guilty of contributory negligence. (Emphasis ours.)
Defendant first says the instruction injects antecedent negligence on the part of defendant into the case and permits of a plaintiff's verdict even though the jury consider plaintiff guilty of contributory negligence. This relates to the portion reading: " * * * that at the place referred to in the evidence the track of the defendant crossed the sidewalk and turned north into Broadway, and if you further find * * * that the rear end of streetcars in making the turn extended out dangerously beyond the rails and over the sidewalk * * *."
In Robinson v. Kansas City Pub. Service Co., 345 Mo. 764, 771[2], 137 S.W.2d 548, 551, 552[3], the plaintiff had been injured when struck by the outward swing of the rear overhang of one of defendant's streetcars as it proceeded around a curve and undertook to predicate her recovery on the humanitarian doctrine. There was a defendant's verdict and plaintiff was awarded a new trial for error in the instructions. Defendant's instruction E in the Robinson case was to the effect the motorman had the right to assume plaintiff would exercise ordinary care for her own safety and would not negligently expose herself to danger, and if plaintiff knew the streetcar was turning, the motorman had the right to assume, until the contrary appeared, that plaintiff would not stand in the path of the overhang of the streetcar, et cetera. The court held instruction E would be error in a humanitarian submission because it required a consideration of plaintiff's antecedent negligence. However, the plaintiff's verdict directing instruction (No. 1) was not entirely under the humanitarian doctrine in that it submitted "(1) That the southbound track on Grand was connected with the eastbound track on 10th Street `by a sharply curved switch track'; (2) that the rear end of the streetcar in question in making the turn `extended out dangerously beyond the rails.'" The court held that in submitting "If it was negligent to maintain the `sharply curved switch track', so that the rear end of the streetcar, in making the turn, `extended out dangerously beyond the rails'" the instruction submitted negligence that was "antecedent to the humanitarian negligence submitted in instruction No. 1; and antecedent negligence, whether of plaintiff or defendant, cannot be taken into consideration in determining whether one is negligent under the humanitarian doctrine"; and, therefore, it was not error to give defendant's instruction E, which required a consideration of plaintiff's contributory negligence. The files in the Robinson case disclose that the hypothesized findings, held erroneous, of plaintiff's said instruction occurred, as in the instant instruction, in the introductory portion thereof, undertaking to submit the attending conditions, and also that the portion thereof informing the jury that plaintiff's contributory negligence constituted no defense is not quoted in the opinion.
*601 In Wholf v. Kansas City, C. C. & St. J. R. Co., 335 Mo. 520, 524 et seq., 73 S.W.2d 195, 196 et seq., a humanitarian case followed in the Robinson case, plaintiff's verdict directing instruction in the portion submitting the attending conditions mentioned the use of the highway-railroad grade crossing involved by truckers going to and from a mine and defendant's knowledge thereof in the exercise of ordinary care and defendant's maintenance of a statutory whistling post and custom of sounding a whistle thereat. The instruction, although it did not carry to a conclusion the premises of primary negligence, was held to be double barreled and erroneous "in that it laid before the jury primary negligence and, after a fashion, humanitarian negligence" and "did not submit to the jury the humanitarian theory of negligence alone."
The instant plaintiff did not submit, as in the Robinson case, the finding of a "sharply curved switch track"; but did submit a finding that defendant's track crossed the sidewalk and turned or curved north into Broadway and that the rear end of streetcars in making the turn extended out dangerously beyond the rails and over the sidewalk. In the Robinson case and in the instant case it was the dangerous outward swing of the rear end of the streetcar as it proceeded around defendant's curved track that was submitted as leading to plaintiff's injury under a humanitarian submission. The outward swing of the streetcar was the result of the curve, whether sharp or not, in the track constructed and maintained by defendant, and there is no substantial difference in the ultimate fact presented by the questioned portions of the two instructions under the humanitarian doctrine. "Dangerous" is defined as "2. Attended or beset with danger; full of risk; perilous." Webster's New International Dictionary, 2d Ed. To maintain a dangerous condition in a public sidewalk bespeaks negligence. Dangerous has been considered synonymous with not reasonably safe. Hastey v. Kaime, 317 Mo. 1010, 297 S.W. 50, 53 [7, 8]; Rigsby v. Oil Well Supply Co., 130 Mo.App. 128, 137, 108 S.W. 1128, 1131; Borowski v. Loose-Wiles Biscuit Co., Mo.App., 229 S. W. 424, 426[3]. A plaintiff's contributory negligence constitutes a defense to a defendant's primary negligence; and defendant also claims error in the refusal of its instruction on plaintiff's contributory negligence. Under the holding in the Robinson case, the instruction in the instant case presented before the jury premises involving defendant's antecedent primary negligence and was erroneous as a humanitarian submission authorizing a plaintiff's verdict although plaintiff was contributorily negligent.
Defendant further contends the instruction is erroneous because it failed to require the jury to find that defendant's failure to warn or to stop constituted negligence under the humanitarian doctrine, and also that it unduly extended the imminent peril zone in submitting the finding that "if you further find * * * that at said time plaintiff was in a position of imminent peril of being struck by the overhang of said streetcar, if the same proceeded into and upon the curved track * * *."
The instruction, as stated in plaintiff's brief, placed the zone of imminent peril at the time the streetcar proceeded into the curved track. Where the imminent peril zone begins is ordinarily a question of fact for the jury. Perkins v. Terminal R. Ass'n, 340 Mo. 868, 102 S.W. 2d 915, 923[13]; Martin v. Effrein, 359 Mo. 1150, 225 S.W.2d 775, 778[7]; Johnson v. Hurck Delivery Service, Inc., 353 Mo. 1207, 187 S.W.2d 200, 202[3].
Swain v. Anders, 349 Mo. 963, 163 S.W. 2d 1045, 1051 [10-15], points out, reviewing cases, that negligence, not constituting the violation of a statute or ordinance, is ordinarily a question for the jury to determine and does not become a question of law alone unless the acts constituting it are of such character that there is no room for conflicting inferences and all reasonable men would concur in pronouncing the acts negligent. See also Ducoulombier v. Baldwin, Mo.App., 101 S.W.2d 96, 102 [13-15]; Nagel v. Thompson, 237 Mo.App. 1061, 170 S.W.2d 416, 422[7].
We again mention that plaintiff was not injured by the front of the streetcar but by *602 the outward swing of its rear end. She watched it approach and pass her until she was struck by the rear end. In her contention that she made a humanitarian case, plaintiff, in her brief, quotes the testimony of defendant's motormen to the effect that had they seen a woman in plaintiff's position while operating a streetcar toward the curve along the westbound track, which was 78 feet in length, they would have given a warning and, if she did not move, would have stopped. Defendant's failure to act in this respect may have been primary negligence under the pleaded vigilant watch ordinance requiring a stop in the shortest time and space possible after the first appearance of danger, Murphy v. St. Louis Public Service Co., Mo.Sup., 244 S. W.2d 31, 34, citing cases, but negligence under the humanitarian doctrine, depending on the basic fact of imminent peril, is more restricted in scope. Blaser v. Coleman, 358 Mo. 157, 213 S.W.2d 420, 421[2], states: "The peril truly must be imminentthat is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient to create imminent peril." Chenoweth v. McBurney, 359 Mo. 890, 224 S.W.2d 114, 117. Since the streetcar in this case could be stopped in 25 to 30 feet when traveling 10 miles an hour and as plaintiff was struck by the outward swing of its rear end when the front end was out in the street approximately the length of the car and plaintiff was standing several feet west of where it entered the curved track, plaintiff was not necessarily in imminent peril if the streetcar proceeded into the curved track. The instruction, however, permitted the jurors to assume that a finding of imminent peril at the instant the streetcar proceeded into the curved track had the sanction of the court and that defendant's failure to then act constituted negligence as a matter of law. A juror if free to determine as fact issues the imminent peril zone, without comment thereon by the court, and defendant's negligence might reasonably consider defendant's duty under the humanitarian doctrine did not arise at the instant the streetcar proceeded into the curved track. Defendant's duty under the humanitarian doctrine did not extend far beyond the 25 to 30 feet required to stop the streetcar. We cannot say all reasonable men would concur that the imminent peril zone and defendant's resultant humanitarian negligence began at the instant the streetcar proceeded into the curved track, and, it follows, the instruction had a tendency to improperly extend the imminent peril zone and enlarge defendant's duty and negligence under the humanitarian doctrine. We think the instruction should be redrafted to conform with the observations in the above cases.
We have examined the other points and think they need not be developed. Some of the situations are unlikely to recur and others, which plaintiff seeks to avoid on technical grounds, are likely not to develop under the situation presented by the instant record if they arise again.
The judgment is reversed and the cause is remanded.
BARRETT, C., concurs.
WESTHUES, C., dissents.
PER CURIAM.
The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.
All concur.