THE STATE EX REL. MARGARET SIEGEL, a Minor, by Her Next Friend, ISABEL JOHNSON, v. CHARLES H. DAUES ET AL., Judges of St. Louis Court of Appeals.—300 S. W. 272.

Court en Banc, December 2, 1927.

*Brownrigg, Mason & Altman* for relator.

258

*Charles W. Bates, T. E. Francis* and *John F. Evans* for respondents.

WALKER, C. J.—*Certiorari* is invoked to quash the record in the case of Margaret Siegel, plaintiff, v. Rolla Wells, Receiver of the United Railways Company, defendant. In this suit the plaintiff, in a personal injury case, recovered judgment against the defendant in

the sum of $4,500. Upon an appeal to the St. Louis Court of Appeals the judgment was reversed.

The conflict urged by the relator upon which our jurisdiction is based is the ruling of the Court of Appeals that under the facts the humanitarian rule upon which the relator relied for a recovery was not applicable.

The facts as stated in the opinion are as follows:

The testimony adduced on behalf of plaintiff tended to show that she was struck by the rear end of a westbound car on the defendant's Hodiamont line as it traversed the curve at Twelfth and Locust Streets turning northwardly into Twelfth Street, because the outward swing of the read end of the car in making the turn projected a distance of five and one-half feet over the tracks.

The defendant has two sets of tracks, one for eastbound cars and one for westbound cars, at the point in question. Plaintiff, upon signal from the traffic officer, left the sidewalk at the northwest corner of Twelfth and Locust Avenue and started to walk eastwardly across Twelfth Street and proceeded to a point three or four feet west of the west rail of the westbound tracks of the defendant, where she stopped and waited to permit the westbound Hodiamont car to pass her. Plaintiff saw the car approaching her when it was distant thirty-five feet, and she remained standing at the same point near the west track continuously until the time she was struck by the rear end of said car. According to her testimony the motorman saw her, for he smiled at her. The front end of the car projected three feet ten inches over the tracks on the turn and passed plaintiff in safety, leaving a space of a foot or so between her and the front fender of the street car, and plaintiff testified: "I didn't think the back end was going to pass any closer to me and I continued to stand there" but as the car proceeded on its way around the turn the plaintiff was struck by the rear end of the car, which extended beyond the track five feet ten inches. The car, at the speed it was going, could have been stopped in six feet. The distance from the point where the motorman was standing in the front of the car to the front of the rear vestibule was thirty-four feet.

The cases cited by the relator with which it is alleged the ruling of the Court of Appeals is in conflict are: Laurent v. United Rys., 191 S. W. (Mo.) 992; Hill v. K. C. Ry. Co., 289 Mo. 193, 233 S. W. 205; Banks v. Morris, 302 Mo. 254, 257 S. W. 1. c. 1019.

The Court of Appeals held, under the facts as above stated, that "the motorman seeing the plaintiff and knowing that she was aware of the car with no obstacle to keep her from stepping back, if such action became necessary, under the authorities, had the right to assume that she would in due time step back, if necessary, and avoid being struck by the rear end of the car."

The question is whether in view of our rulings in the cases cited by the relator as in conflict with the holding of the Court of Appeals, the motorman was entitled to assume that the relator would be aware of the fact that the rear end of the car would, upon rounding the curve, extend further over the track than the front end, and that if necessary she would step back in time to avoid being struck by the rear end. There is no fact stated in the opinion to justify the court's conclusion that the motorman was entitled to the assumption that the relator knew she was in a position of peril and would be struck if she did not move back before the rear end of the car reached or struck her. Her conduct, measured by that instinctive desire for self-preservation possessed by all sane persons, is indicative of her obliviousness to peril. While she was aware of the approach of the car, as the front end of the same passed her without injury, it is in accord with reason and human experience that she presumed she would not be struck by the rear end and hence that she was oblivious of peril. To rule otherwise would be to presume that she possessed the knowledge of an expert as to the construction of the car and that the rear end of the same, in rounding a curve, would extend further over the track than the front end, a presumption which finds no support in the facts. The motorman, however, had actual knowledge of the peril of the relator, and opportunity to observe her actions indicative of her obliviousness of danger. Possessed of such knowledge he had the ability with the means at hand to have averted the impending injury as the car at the speed it was moving could have been stopped in six feet. Although possessed of this knowledge and being afforded time by reason of the slow speed of the car to stop the same before it struck her, he failed to comply with the requirements of the humanitarian rule and did nothing to avert the injury.

In Banks v. Morris, supra, cited by relator, as in conflict with the ruling in the instant case, it is said, in the discussion of the humanitarian rule:

"Under this doctrine 'the position of peril' is one of the basic facts of liability, it might be denominated the chief one. [State v. Trimble, 253 S. W. (Mo. App.) 1019.] It is of no consequence what brings about, or continues, the situation of peril. It may be through the obliviousness of the one imperiled, or through his inability to extricate himself from his environment, or through his efforts to rescue another, or through his sheer hardihood or recklessness. But regardless of what occasions his peril, the law out of its extreme regard for human life makes it the duty of another who sees him in peril to exercise ordinary care to prevent injury or death. (Citing cases.)

"The constitutive facts of a cause of action under the humanitarian rule, stated in their simplest terms, without any of the re-

finements, limitations or exceptions which might arise on a particular state of facts, are contained in this formula:

" '(1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care to avert such impending injury; and (5) by reason thereof plaintiff was injured.'

"Evidence tending to prove these facts makes a prima-facie case for plaintiff.

"In some instances obliviousness of danger on the part of the plaintiff is necessary to make the situation in which he is placed one of peril. In such cases it is of course incumbent upon the plaintiff to make proof of the facts and circumstances tending to show obliviousness, not only for the purpose of establishing that he was in a position of peril, but to bring home to defendant a knowledge of his peril."

In the Laurent case, 191 S. W. (Mo.) l. c. 993, cited by the relator as conflicting with the ruling of the Court of Appeals, the physical facts are very similar to those in the case at bar. There, as here, the facts disclosed that the rear end of the car extended more than five feet over the rail nearest to the sidewalk upon which the relator was standing and that the relator had no notice or previous knowledge of that fact. As proof of the latter statement of the relator that she didn't think the rear end of the car was going to pass any closer to her than the front end, she remained standing near the track. Further than this, and as corroborative of the conclusion that the danger to which the relator was subjected was a lurking one and as a consequence that she could not be presumed to have knowledge of the same, the following from the Laurent case is apposite:

"That was an unusual condition, so much so that no court should declare as a matter of law that every person of ordinary care and prudence should have anticipated the fact that the end of the car would protrude so far. That is not the usual thing for a car to do in rounding curves, without the curve is an unusually sharp one, or where the car is an unusually long one; and in neither event does the law require the traveling public to take notice of unusual conditions."

We do not find the conditions in the Laurent case in any wise different from the material facts in the case at bar, and this court in the former case had this to say concerning the nature of the conditions therein:

"It is not in every case that the physical conditions impart to the observer the danger concealed therein, for some of the most innocent

things in appearance are the most dangerous and deadly to the observer when put in operation; and in all such cases, not only the physical condition must be seen, but the lurking danger incident thereto must also be of such a character that a person of ordinary prudence would, by the exercise of ordinary care, have discovered it in time to have avoided the injury; or, in other words, if the danger itself is not so apparent to such a person, although the physical condition which causes it is, the court cannot declare as a matter of law that the injured party was guilty of contributory negligence, but must submit that fact to the jury under proper instruction."

From this it will be seen that the ruling in the Laurent case is that the motorman has no right to assume, under the facts and circumstances in evidence (which we have shown are on all-fours with those in the instant case), that in the presence of a hidden danger a person of ordinary prudence would be presumed to step back to avoid injury. The conflict between the Laurent case and that at bar is, to my mind, apparent.

While it may be urged that the humanitarian doctrine was not directly involved in the Laurent case, the motorman and the relator's reciprocal duties to each in that case, were the same as those in the instant case; and the rule announced in the one as to the absence of the motorman's right to assume the relator's knowledge of her danger is applicable in the other, although such application may involve in the instant case the invoking of the humanitarian doctrine.

Under the Hill case, 289 Mo. 193, cited by relator, it is held that under the humanitarian rule, if the operator of a car sees one in peril and oblivious thereof, he is required to use all the means at hand to avoid injury to such person. If he can stop the car he must do it. The effect of the ruling of the Court of Appeals under the facts in the instant case is to ignore this well-defined rule of action.

In consideration of all of which we are of the opinion that the Court of Appeals contravened the ruling of the decisions of this court in the cases cited and that its record should be quashed. It is so ordered. All concur, except *Blair, J.*, who dissents.