AUGUST J. SCHNEIDER, Appellant, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation.—107 S. W. (2d) 787.

Court en Banc, July 2, 1937.

*C. O. Inman* for appellant.

*T. M. Pierce, J. L. Howell* and *Walter N. Davis* for respondent.

FERGUSON, C.—Action for damages for personal injuries sustained by plaintiff when an automobile truck, which he was driving, was struck by one of defendant's trains at a railroad crossing in the city of St. Louis. The cause was tried in the circuit court of that city and resulted in a verdict for plaintiff in the sum of $12,000. The trial court sustained defendant's motion for a new trial and plaintiff brings this appeal from the order granting the new trial.

The case was submitted to the jury solely on negligence under the humanitarian doctrine. The specific violations of the humanitarian rule alleged and submitted being failure to stop the train or to give a timely warning. The order granting the new trial specified as ground thereof that the trial court erred in giving, at plaintiff's request, instructions numbered 3 and 11. Instruction numbered 11, on the measure of damages, is not criticized here and since it appears to be in approved form and our attention is not directed to wherein it is alleged to be erroneous the instruction will not be further considered. But Instruction 3 hypothesizing the facts which the jury were required to find to authorize a verdict for plaintiff on the humanitarian theory is in controversy.

However before looking further to the instructions we must rule defendant's contention that plaintiff "did not make a submissible case," and that its motion for a directed verdict, in the nature of a demurrer to the evidence, at the close of the evidence, should have been sustained. It follows that if that contention is sustained an examination of instructions will be obviated. This requires a review of the evidence. The collision occurred at the crossing of Dock Street and defendant's railroad tracks in the city of St. Louis. Dock Street

is an east and west street and the railroad tracks extend north and south in Hall Street, a north and south street. Four north and south railroad tracks cross Dock Street. The tracks are numbered from the east, the easternmost track being designated track 1, the next track to the west track 2, etc. Track 1 is a sidetrack, track 2 "the northbound main line track," and, track 3 "the southbound main line track." The tracks are "straight" for several blocks both north and south of this crossing. The train which struck defendant's truck came from the north, on track 1, and for a distance of several hundred feet east from the tracks there is an unobstructed view of the tracks for three or four blocks to the north. The collision occurred at about six P. M., August 1, 1933. "The weather was fair and it was just getting dusk" but the visibility was such that plaintiff could plainly see trains at a distance of several blocks and likewise trainmen could see automobiles, and the drivers thereof, on the streets or near or upon the tracks within that distance. The collision occurred on track 1, the easternmost track, and the truck was struck by the southernmost car of three freight cars which were being "shoved" or "backed" south by a locomotive attached to the northernmost car.

We now relate the facts and circumstances of the occurrence as shown by the evidence most favorable to plaintiff. Plaintiff was driving the truck west on Dock Street toward the crossing at a speed of about ten miles an hour. When plaintiff got within about fifteen feet of the first or easternmost railroad track he slackened the speed of the truck to about four miles an hour, looked both to the north and south, and seeing no trains or cars moving toward the crossing from either direction, shifted gears and continued toward the railroad tracks with the intention of crossing. When, at that time, he looked north plaintiff saw some freight cars on track 1 (the sidetrack and the easternmost track), about 200 to 250 feet north of the crossing (these cars later struck the truck) which he thought were "standing still." He did not see anyone on or about these cars and did not notice that a locomotive was attached to the north end of the cars. As he came within about five feet of this first track plaintiff heard a locomotive whistle from the south and discovered a passenger train coming north on track 2, the northbound main line track. The passenger train was then about, or a little south of, Branch Street, the east and west street one block south of Dock Street. Plaintiff immediately applied the brakes and the truck came to a complete stop on track 1. Plaintiff's attention was then and immediately thereafter directed wholly to the passenger train approaching and passing on the next track to the west and he did not again look north as he kept the truck standing on track 1 waiting for the northbound passenger train to reach and pass over the crossing. As the passenger train was on and passing over the crossing plaintiff suddenly discovered the freight cars moving

south on the track on which the truck was standing and the south end of the southernmost car then only about ten feet from the truck. He instantly attempted to put the truck in reverse gear and back off the track, as he could not go forward on account of the passenger train on the next track, but did not have sufficient time to do so and the southernmost freight car struck the truck, turned it over and pushed it about fifty feet south, injuring plaintiff. Plaintiff did not hear any bell or whistle sounded by the freight train at any time before the collision. Two witnesses for plaintiff testified that they saw the collision—one from a position east of the crossing and the other from a point northwest of the crossing. These witnesses testified in substance that when the passenger train coming from the south sounded a whistle south of Branch Street plaintiff's truck almost immediately came to a stop on the easternmost track (the sidetrack) and remained standing there awaiting the passage of the passenger train on the next track; that when the truck stopped on track 1 the freight cars were yet 175 to 200 feet north of the crossing moving south at a speed of eight to ten miles an hour; that there was no slackening of the speed of the freight cars at any time before the collision; and that no bell or whistle was sounded by the engine which was pushing the freight cars at any time before the collision. Defendant's evidence was that two brakemen were stationed on the southernmost freight car and another on the car next to the engine, and that the locomotive engineer and these brakemen first saw the truck as it approached the crossing while it was yet from 400 to 250 feet east of the crossing and thereafter watched it continuously up to the time of the collision. The locomotive engineer, defendant's witness, testified that "going 8 miles an hour I could stop those cars at the place of the accident and under the conditions existing there, and with safety to persons on the cars, in a distance of about 40 feet, and at 10 miles an hour in 45 or 50 feet;" and also that "he would have had no difficulty in stopping" before reaching the crossing and "plenty of time to have sounded the emergency whistle when our leading car was 150 or 200 feet away" from the crossing, as plaintiff's evidence shows was the situation when the truck came to a stop on the track.

Defendant's version, as related by its trainmen is that no passenger train was at the time passing over or immediately approaching the crossing, and that the only passenger train on track 2 at about that time was stopped at Branch Street after the collision and because some of the wreckage obstructed track 2; that the freight cars were moving at a speed of six to eight miles an hour; that when the truck came within about fifteen or twenty feet of the track plaintiff brought it "almost to a stop;" that at that time the southernmost freight car was only about twenty feet from the crossing and that plaintiff

shifted gears and the truck "shot out ahead of us" resulting in the inevitable and unavoidable collision.

In support of its contention that plaintiff did not make a submissible case defendant advances two propositions. First, that "The evidence shows that plaintiff drove upon the track in such close proximity to an approaching train that defendant's employees were unable to stop same or to warn him in time to prevent the accident." This argument is apparently predicated upon defendant's evidence alone excluding from consideration plaintiff's evidence or any evidence favorable to plaintiff's theory. Such a course cannot be followed in determining a final demurrer to the evidence. In ruling such demurrer we accept plaintiff's evidence as true, search the whole evidence, whether offered by plaintiff or defendant, and accord plaintiff the benefit of any and all facts or circumstances, and the reasonable inferences therefrom, tending to support his theory of the case, while evidence on the part of, or favorable to, the defendant, which is contradicted, is excluded. [Gray v. Columbia Terminals Co., 331 Mo. 73, 52 S. W. (2d) 809; Tash v. St. Louis-San Francisco Ry. Co., 335 Mo. 1148, 76 S. W. (2d) 690; Gilliland v. Bondurant, 332 Mo. 881, 59 S. W. (2d) 679.] When the evidence herein, as stated, supra, is considered, in the light of the foregoing rules, we think it sufficiently appears, without further review or analysis of the evidence being necessary, that there is no merit in this first proposition which defendant advances in support of its demurrer to the evidence. The second is likewise, as to the demurrer to the evidence, without substance. It is based on the alleged incredibility of certain testimony elicited upon cross-examination. Able counsel in the course of a skillful and pressing cross-examination succeeded in obtaining from plaintiff varied estimates of the time, in seconds, that elapsed from the time he saw the freight cars, as he thought and stated, standing 200 to 250 feet north of the crossing, until the collision. Defendant's counsel argues that these estimates of only four or five seconds in time make plaintiff's version of the occurrence wholly incredible and in that connection calculations of speed are made and it is said that "at some point in that 200 feet the train would necessarily have traveled at the rate of 100 miles an hour." It is clear in reading the cross-examination, as counsel returned repeatedly to this line of questioning and plaintiff made various estimates of time in agreement with the suggestion contained in the questions, that plaintiff did not know nor could he form any definite or exact estimate in seconds of the elapsed time. He testified to what occurred and produced two purported eyewitnesses who testified positively that when the truck stopped on the track, to await the passage of the passenger train, the southernmost car of these freight cars involved was then 175 to 200 feet north of the crossing and that the train continued moving south, at a speed of

eight or ten miles an hour, without any slackening of speed, signal or warning, onto the crossing, striking the standing truck. If the jury chose to believe these witnesses then it follows that so far as the time element is important it could have been arrived at by calculations based on speed of the freight train and the distance as shown by plaintiff's evidence. We think it plain that these were matters of argument to the jury and not for the court on the demurrer to the evidence. Upon the evidence as a whole, viewed and considered in the light most favorable to plaintiff's theory of the case, we hold that plaintiff made a submissible case under the humanitarian doctrine both for failure to timely stop the train and failure to warn.

This brings us to an examination of plaintiff's given Instruction 3, the giving of which the trial court specified of record as ground for its order granting the new trial. [Sec. 1003, R. S. 1929.] The following embraces the portions of the instruction pertinent to this inquiry:

"The court instructs the jury that if you find and believe that . . . while said truck was upon defendant's track at said Dock Street said truck was struck by a freight train being operated by the defendant southwardly on said track, and that plaintiff sustained bodily injuries as a direct result thereof; and, if you further find and believe from the evidence that after the plaintiff came into a position of imminent peril of being struck by said train the servants of defendant operating said train saw, or by the exercise of ordinary care should have seen such perilous position of the plaintiff, in time thereafter, by the exercise of ordinary care, with the means and appliances at hand and with safety to persons on said train, for them to have stopped the same or given a timely and adequate warning to the plaintiff of the approach of said train and thereby have avoided the collision and injuries to plaintiff; and if you further find and believe from the evidence that said servants of defendant failed and neglected to so stop said train or give such timely and adequate warning, . . . and, if you find the foregoing facts, then it will be your duty to return a verdict in favor of the plaintiff, even though you may further find and believe from the evidence that plaintiff was himself guilty of negligence which directly contributed to cause the collision and his said injuries."

Defendant says the instruction is erroneous and fatally deficient in that "it permits a recovery on the failure to warn alone without requiring a finding that plaintiff was oblivious," that is, without hypothesizing and specifying obliviousness as one of the essential facts the jury are required to find to authorize a verdict for plaintiff. It will be borne in mind that the criticism goes only to the omission from the instruction of alleged essential matter and that we are not now dealing with the sufficiency of the evidence to make a submissible case of

failure to warn under the humanitarian doctrine. This court has repeatedly held that if no substantial evidence be adduced tending to show that plaintiff was oblivious a submissible humanitarian negligence case of failure to warn is not made. [Pentecost v. St. Louis Merchants' Bridge Terminal Railroad Co., 334 Mo. 572, 66 S. W. (2d) 533, and cases there collected and cited; Phillips v. St. Louis-San Francisco Ry. Co., 337 Mo. 1068, 87 S. W. (2d) 1035.] In the instant case defendant does not contend that there was no substantial evidence tending to show that when plaintiff drove, stopped his truck and permitted it to remain standing, upon the track he was unaware or oblivious of the approach of the freight cars and that his obliviousness should have been apparent to the trainmen. We have held that the evidence most favorable to plaintiff tending to show such facts was sufficient in ruling, supra, that a submissible humanitarian case of failure to warn was made.

Reverting now to Instruction 3. The objection defendant makes to the instruction is ruled by the recent decision of the Court en banc in Perkins v. Terminal Railroad Assn., 340 Mo. 868, 102 S. W. (2d) 915. It would be a labor of supererogation for the writer to undertake a discussion of the question as all the arguments pro and con advanced in the briefs filed herein are thoroughly discussed in the majority opinion and the two dissenting opinions in the Perkins case. In that case plaintiff was injured when his truck was struck by one of defendant's trains at a railroad crossing in the city of St. Louis. It was submitted solely on the humanitarian doctrine for failure to warn and failure to slacken speed of the train and we held that submissible case was made on both theories. There plaintiff's instruction authorizing a verdict in his favor merely required, as in this case, a finding that the defendant saw, or by the exercise of ordinary care could have seen, plaintiff in a position of imminent peril in time thereafter with the means and appliances at hand, etc., to have slackened the speed of the engine and to have sounded a warning. The instruction makes no specific reference to obliviousness nor does it require a specific finding thereof. The objection to the instruction in the instant case was made to the instruction in the Perkins case, that is, that the instruction ''failed to require a finding that plaintiff was not aware of the approach of the train (obliviousness).'' The majority opinion in the Perkins case, in which four of the judges concurred, first citing and quoting from Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482, enumerates the constitutive facts of the humanitarian rule and then points out, that ''the position of peril'' is ''one of the basic facts of liability'' thereunder; that ''it is unnecessary for a plaintiff to plead that he was oblivious to his peril;'' that the cause of his peril is a ''matter that the plaintiff must show by his evidence'' and ''if obliviousness is the

cause of his peril it is necessary for him to prove it;" but that "obliviousness is but a subsidiary or evidentiary fact, the perilous situation of plaintiff and defendants knowledge of it" being the "ultimate, issuable facts." The majority opinion then further points out that the instruction requires the jury to find "that the plaintiff was in 'a position of imminent peril,' and that was the ultimate or issuable fact for the jury to determine," and observes; "It is true the words 'imminent peril' are not defined. They are ordinary English words and require no definition." The majority opinion then rules against appellant's objection to the instruction and holds that it sufficiently submits plaintiff's theory under the humanitarian rule.

The majority opinion in the Perkins case having, in effect, ruled plaintiff's instruction numbered 1, complained of, continues with this further comment or observation: "Instructions must all be read together and if instruction number 1·was lacking in clearness in this respect, it was made clear by defendant's instruction number 4 which required the jury to find 'that plaintiff was not conscious of the approach of said train' and that the persons in charge of said train knew such fact." We have the same situation in the instant case. Defendant's Instruction 7 in this case contains the following among other directions to the jury:

"The jury is further instructed . . . that . . . the persons in charge of said train were not obliged to warn plaintiff, nor to stop or slacken the speed of the train unless and until such person or persons saw, or by the exercise of ordinary care on his or their part, would or could have seen that plaintiff was not conscious of the approach of said train and that he was in a position of imminent peril and in danger of being struck by it; and even though you believe from the evidence that plaintiff was going upon the track which said train was approaching, and that plaintiff was not conscious of the approaching train and was in danger of being struck by it, yet if you further find and believe from the evidence that the employees on said train did not see, nor by the exercise of ordinary care on his or their part could have seen that plaintiff was in a position of imminent peril of being struck by said train and that he was not conscious of the approach of said train, until it was too late, by the exercise of ordinary care, to warn plaintiff of the approach of said train or to stop or slacken its speed so as to prevent it from striking plaintiff, then the defendant is not liable and your verdict must be in favor of defendant."

On authority of the Perkins case, supra, we hold the giving of the plaintiff's Instruction 3 was not error.

Defendant contends that the order granting a new trial is sustainable on the ground, duly assigned in its motion for new

trial, that the trial court erred in refusing its Instruction B. While this assignment was not specified of record by the court as a ground of its order granting a new trial, and was in effect overruled, defendant is entitled to invoke a review of other assignments of error in its motion for a new trial and have the order granting a new trial affirmed if it can be sustained upon such other ground. [Sakowski v. Baird, 334 Mo. 951, 69 S. W. (2d) 649.] By its Instruction B defendant would have had the court instruct the jury "that, on approaching a railroad track, the danger zone is a few feet distant and away from the point where a truck cannot be stopped before running upon the railroad track." The remainder of the instruction is in substance a repetition and reiteration of the same matter embraced in defendant's given instruction numbered 7, an excerpt from which is quoted above. As the writer understands, plaintiff's only contention about this instruction is that the court should have given the jury the definition of danger zone set out therein. As stated all the matter set forth therein was covered by defendant's Instruction 7 except the definition of danger zone. "Where the position of peril began was for the jury to determine under the evidence." [Perkins v. Terminal Railroad Assn., supra.] The "danger zone, within the contemplation of the humanitarian doctrine, must obviously be one of variable limits, depending upon the facts of the particular case." [Hinds v. Chicago, B. & Q. Railroad Co. (Mo. App.); 85 S. W. (2d) 165.] "The limits of the danger zone must be determined by the facts of each particular case." [Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S. W. (2d) 600.] Had the court given the instruction it would thereby have undertaken to usurp the province of the jury and, on conflicting evidence, determine and fix the limits of the danger zone, as a matter of law, and so instruct the jury. It would have constituted on unwarranted comment on the evidence. Furthermore the definition attempted is not applicable to the facts of this case. Where a motorist is approaching and entering upon or about to enter upon a railroad track, and obliviousness is involved, the question is not whether he could stop his automobile, or within how many feet or what distance he could do so, but whether from appearances and under the circumstances he will stop before going into the path of a moving train. In other words, his peril arises by reason of his obliviousness not his inability to stop. "Where the danger zone commenced was a question for the jury under the facts and circumstances." [Kloeckener v. St. Louis Pub. Serv. Co., 331 Mo. 396, 53 S. W. (2d) 1043.] It was therefore not error to refuse the instruction.

It follows that the order granting the new trial must be, and it hereby is, reversed and the cause remanded with directions to the

trial court to reinstate the verdict and enter judgment accordingly as of the date of the original judgment.

PER CURIAM:—The foregoing opinion by FERGUSON, C., in Division One, is adopted as the opinion of the Court en Banc. *Leedy* and *Tipton, JJ.*, and *Hays, C. J.*, concur; *Douglas* and *Ellison, JJ.*, concur in result; *Gantt* and *Frank, JJ.*, dissent.