DeEtta Robinson v. Kansas City Public Service Company, Appellant.—137 S. W. (2d) 548.

Division One, March 6, 1940.

*Charles L. Carr, Cooper, Neel & Sutherland* and *David P. Dabbs* for appellant.

*Edna Sperry* and *Louis R. Weiss* for respondent.

768

BRADLEY, C.—Plaintiff brought suit to recover $15,000 for personal injuries alleged to have been caused by the negligence of defendant's motorman. The verdict of the jury was for defendant. Plaintiff's motion for a new trial was sustained "on account of error in instructions" and defendant appealed.

Plaintiff alleged both primary and humanitarian negligence, but went to the jury on the humanitarian doctrine only. Defendant answered by a general denial and a plea of contributory negligence.

Defendant had double street car tracks in Grand Avenue, a north and south street, and in Tenth Street, an east and west street. She was struck about 9 A. M., near the intersection of Grand and Tenth streets, by the rear overhang of a street car, forty-five feet in length, as it was turning left and east from Grand onto Tenth Street. At the place, Grand Avenue was sixty-three feet and ten inches from curb to curb, and Tenth Street was thirty-six feet from curb to curb. It was twenty-four feet and three inches from the west curb of Grand to the west rail of the west (southbound) track.

Plaintiff testified that she was on the way to her place of work, south of Tenth Street, and that she approached Grand Avenue from the east on the sidewalk on the north side of Tenth Street; that when she reached Grand, she saw a street car standing in the southbound zone on the west side of Grand, and facing south; that she thought it was a southbound car; that the front of the car was two or three feet north "of where you crossed the street;" that as she passed in front of the car she held up her hand, and that when she got around to the door she knocked on it; that the motorman "looked that way," but did not open the door, but started up the car. She further testified that when the car started up she thought she had missed it and "turned around thinking that I would go to the west side of the street and walk down" to place of work; that there were automobiles "coming from the north," and that she did not know the street car was turning east onto Tenth Street, and that, before

she had moved after turning around, she was struck by the rear overhang of the street car as it turned.

Plaintiff and Gerald D. Elliott, defendant's motorman, were the only witnesses who testified as to what occurred. Elliott testified that he stopped the car two or three feet north of the switch points, and about twenty or twenty-one feet north of the north edge of the "crosswalk," that is, the area or lane used by pedestrians in crossing Grand Avenue; that the first time he saw plaintiff she was facing north and was in "the center of that pedestrian lane," and "approximately five feet" west of the west rail of the southbound track; that about that time he started up and that plaintiff started walking north. Elliott further testified:

"I started up with the green light and sounded the gong and started around to go east around the curve to go east on Tenth street, and there was a lot of traffic coming across northbound at that time of morning, and I was just inching around there, just picking up a point and throwing it off like that (indicating), and stopping maybe once or twice to let cars around me, . . . and I couldn't possibly have been going over a mile or mile and a half. . . . Q. Did you observe this lady whom you saw start—saw turn north and start in that direction after you had started up? Did you observe her again? A. I did. Q. All right. Just tell the jury what observation you made of her. A. Well, as I started, I saw this lady, and as I described, in the pedestrian lane start walking north at the outside edge of that swing line, see, just as I would turn my head in cutting the traffic, the automobile going north from time to time, I would watch her in that mirror as she was walking, just as I described, before picking up and throwing off, and I probably noticed her about three times as I would look in the mirror, then look back at the traffic. . . . Q. Was there a collision between your car and this woman? A. There was. . . . Q. Did you see the actual collision occur? A. I did. . . . Q. How near was it (car) to her at the time you last saw her before the collision, just before the thing came in contact with her, how close was the car? A. As I looked in the mirror, took my eye off the northbound traffic and looked in the mirror again, there was about that much (a foot or two) daylight between her shoulder and my car (indicating). Q. What did you do? A. I immediately stopped. . . . Q. Did you move any after you collided with her, and if so, how much would you say? A. I would say that I moved about a foot to eighteen inches. Q. Did you act immediately upon seeing the car that close to her? A. Just about a foot, I would say. Q. Within a foot or two? A. Yes, approximately. Q. Was she knocked down? A. She was not. Q. Was she hurled to the side? A. She was not."

As stated, the trial court granted a new trial "on account of errors in instructions." At the request of defendant the court gave In-

structions C, D, G, H, I, and J, and modified and gave for defendant Instructions E, and F, and refused Instruction 6 requested by plaintiff, and gave Instruction X of its own motion. Defendant does not contend that plaintiff did not make a submissible case under the humanitarian rule. Plaintiff does not contend that error was committed in giving Instructions D, H, I, J, and X, hence these will not be considered.

In the situation, we have for consideration defendants Instructions C, E, F, and G, and plaintiff's refused Instruction 6.

▮▮ Instruction C told the jury, among other things, that plaintiff could not recover "for any impaired condition she may have been in prior to the *accident* (plaintiff had a prior injury), . . . or for any damages, pain or suffering naturally resulting from any condition or ailments, if any, plaintiff had prior to such *accident*, or since, that are not the result of the accident, . . . happening on or about February 4th, 1935" (italics ours).

The point is that it was error to so use the word *accident*. In support of this contention plaintiff cites Hogan v. Kansas City Public Service Co., 322 Mo. 1103, 19 S. W. (2d) 707, l. c. 713; Sloan v. Polar Wave Ice & Fuel Co., 323 Mo. 363, 19 S. W. (2d) 476, l. c. 481; Hoffman v. Peerless White Lime Co., 317 Mo. 86, 296 S. W. 764, l. c. 772; Wright v. Quattrochi et al., 330 Mo. 173, 49 S. W. (2d) 3, l. c. 5, 6; Totten v. Smith Brothers (Mo. App.), 3 S. W. (2d) 740, l. c. 743, 744; Jones v. Goldberg (Mo. App.), 78 S. W. (2d) 509; Cannon v. S. S. Kresge Co. (Mo. App.), 116 S. W. (2d) 559, l. c. 577.

The Hogan case, supra, defines the word *accident* and comments as follows (322 Mo. 1103, 19 S. W. (2d) l. c. 713) : "The word 'accident,' in popular acceptation and sometimes in law, may denote an occurrence arising without intent or design, or even from the carelessness of man; but in the law of negligence it signifies an event resulting in damages or injury, proceeding from an unknown cause, or from a known cause without human agency or without human fault. [1 C. J., p. 390 et seq.; 20 R. C. L., p. 17 et seq.] The essential requirement is that the happening be one to which human fault does not contribute. [Hoffman v. Peerless White Lime Co., 317 Mo. 86, 102, 296 S. W. 746.] But, when the cause of accident is known, it is better to instruct the jury on the specific issues of fact presented, and so the practice has grown up under our case law of limiting the giving of accident instructions to instances in which there is evidence tending to show the cause is unknown—on the theory that the contrary and more abstract course would confuse the jury. This we understand to be the import of the authorities."

Webster's New International dictionary gives *casualty* as a synonym of *accident*, and says that the word *casualty* is usually confined to a mischance which involves bodily injury or death. Our Workmen's Compensation Law (Sec. 3305, R. S. 1929, Mo. Stat. Ann.,

sec. 3305, p. 8238) defines *accident* as "an unforeseen event happening with or without human fault," and such, undoubtedly, is the common and accepted use of the word. Even court opinions dealing with negligence cases so use the term, example, the Hogan case, supra (322 Mo. 1103, 19 S. W. (2d) l. c. 712), where the court says that "it is not every true accident case in which the court may instruct on accident." Also, it appears that plaintiff's counsel, in asking questions on occasions, so used the word *accident*. The word, as used in Instruction C had reference only to the *occurrence* of plaintiff's injury, and we do not think that the jury could have been misled by this instruction. We might say, however, that in view of the fact that the word *accident* has a dual meaning, its use, in instructions, should be avoided, except in instructions on the theory that the casualty was without human fault.

Defendant's Instruction E told the jury that defendant's motorman "had the right to assume and, in the managing of his street car, to act on the assumption that the plaintiff would exercise ordinary care and caution for her own safety under the circumstances, which you find from the evidence then existed, and that plaintiff would not negligently or recklessly expose herself to danger, but would exercise ordinary care to avoid danger of injury to herself," and further, that if found "that plaintiff saw and was aware of the fact that the street car was turning off of the southbound tracks on Grand Avenue toward the east on Tenth street, then the operator had the right to assume, until the contrary would have appeared to a reasonably prudent operator under the same or similar circumstances, that plaintiff would not stand in the path of the overhang of the street car or would not move into the path of the overhang of the street car," etc.

Larey v. Missouri-Kansas-Texas Railroad Co., 333 Mo. 949, 64 S. W. (2d) 681, was for personal injury resulting from plaintiff's automobile, driven by him, being struck on a crossing, and was submitted solely on the humanitarian doctrine. Defendant, on appeal, made the complaint, among others, that error was committed in refusing its offered Instruction No. 3. In overruling this assignment the court said (333 Mo. 949, 64 S. W. (2d) l. c. 685): "Defendant also complains of the refusal of the court to give its Instruction No. 3, stating that: 'The engineer and fireman operating the engine in question, had a right to expect that any people proceeding over the crossing in question would use ordinary and reasonable care by looking and listening to ascertain if any train or engine was approaching and that they would not go upon said track in close proximity to any approaching train or engine.' This was an instruction requiring consideration of plaintiff's antecedent negligence, which should never be done in a humanitarian case," citing Millhouser v. Kansas City Public Service Co., 331 Mo. 933, 55 S. W. (2d) 673; Wolfson

v. Cohen (Mo.), 55 S. W. (2d) 677; Freeman v. Berberich et al., 332 Mo. 831, 60 S. W. (2d) 393. [See also Brown et al. v. Wheelock et al. (Mo.), 83 S. W. (2d) 911; Willhauck v. Chicago, R. I. & P. Ry. Co. et al., 332 Mo. 1165, 61 S. W. (2d) 336.]

Defendant, however, makes the contention that plaintiff's Instruction No. 1 was not "entirely under the humanitarian doctrine;" that it included "negligent construction and use of a track so sharply curved the rear end of cars extend out dangerously beyond the rails in making the turn," and that for these reasons Instruction E was justified.

Omitting some matters, about which there is no dispute, plaintiff's Instruction No. 1, predicated recovery upon a finding as follows: (1) That the southbound track on Grand was connected with the eastbound track on Tenth Street "by a sharply curved switch track;" (2) that the rear end of the street car in question in making the turn "extended out dangerously beyond the rails;" (3) that "plaintiff took a position in close proximity to the side" of the street car concerned; (4) "that plaintiff was in a position of imminent peril of being struck by the overhang of said street car if the same started up and proceeded into and upon the curved track" and was oblivious of her peril; (5) that defendant's motorman "saw, or, in the exercise of ordinary care, could have seen plaintiff in a position of imminent peril and oblivious thereof from the starting of said street car, in time to have refrained from starting said street car, or if, after having started the same," the motorman . . . "could, by the exercise of ordinary care, with the means and appliance at hand, and with safety to the operator, the passengers, if any, and the street car itself, have given plaintiff sufficient warning or could have stopped said street car before plaintiff was struck (if so), but negligently failed to do so (if you so find), and that as a direct result thereof, the overhang of said street car collided with plaintiff and she thereby suffered injury to her person (if so), then your verdict will be in favor of plaintiff and against defendant."

If it was negligent to maintain the "sharply curved switch track," so that the rear end of the street car, in making the turn, "extended out dangerously beyond the rails," then such negligence was antecedent to the humanitarian negligence submitted in Instruction No. 1, and antecedent negligence, whether of plaintiff or defendant, cannot be taken into consideration in determining whether one is negligent under the humanitarian doctrine. [State ex rel. Fleming et al. v. Bland et al., 322 Mo. 565, 15 S. W. (2d) 798; Alexander v. St. Louis-San Francisco Ry. Co., 327 Mo. 1012, 38 S. W. (2d) 1023; Gray v. Columbia Terminals Co. et al., 331 Mo. 73, 52 S. W. (2d) 809; Wholf v. Kansas City, Clay County & St. Joseph Ry. Co., 335 Mo. 520, 73 S. W. (2d) 195.]

The Wholf case, supra, was for damages for personal injury, and property damage, resulting from a crossing collision. The verdict was

for the defendant, but a new trial was granted because of alleged error in an instruction given for the defendant, which instruction submitted contributory negligence of the plaintiff, and defendant appealed. The plaintiff, it seems, undertook to submit his case solely under the humanitarian doctrine, but the defendant contended that the plaintiff's instruction purporting to submit the case was double barreled, and involved primary negligence, and that in such situation, there was no error in the instruction upon which the new trial order was based. In ruling the point the court said (335 Mo. 520, 73 S. W. (2d) l. c. 198): "Respondent's main instruction is double barreled, as it were, in this, that it laid before the jury primary negligence and, after a fashion, humanitarian negligence. It is true that respondent's main instruction did not logically carry to an ultimate conclusion its premises of primary negligence. But these premises were before the jury none the less." And so ruling, it was held that it was proper for defendant to submit the question of contributory negligence. And we rule that, in the situation in the present case, it was not error to give defendant's Instruction E.

Instruction F concluded as follows: "And if you find and believe from the evidence that after the operator saw, or by the exercise of reasonable care, should have seen plaintiff in or apparently intending to enter into a position of imminent peril of being struck by said street car, that said operator could not thereafter, with the means at his command, *have avoided colliding with plaintiff,* then your verdict must be in favor of the defendant" (italics ours). Instruction E, in effect, has the same direction (near its end) as contained in the italicized phrase of F. Plaintiff argues that such was reversible error in both instructions. We, in effect, ruled contrary to this contention in disposing of Instruction E. The point is that both instructions would preclude recovery on the failure to warn, after the street car started up, which plaintiff submitted along with the alleged failure to stop. Neither instruction could be so construed. Instruction F told the jury, and E is to the same effect, that plaintiff could not recover, if it were found that the operator "could not . . . have avoided colliding with plaintiff." In fact, by such language, more was required of the operator than the law requires, because he was only required to exercise ordinary care to avoid colliding with plaintiff. There was no error in Instruction F.

It is claimed that Instruction G assumes that plaintiff "left a place of safety and walked into peril," and that it improperly restricts the danger zone.

Instruction G is printed in 3 paragraphs. The second paragraph is the one that plaintiff says constitutes reversible error. This paragraph follows: ". . . the court further instructs you that the mere fact that plaintiff was walking in a direction which, if continued, would lead such plaintiff into a position of imminent danger of in-

jury, if you so find, does not place a burden upon the operator of the street car to stop or slow (down) or, in the event you find she was oblivious of the situation, to sound a warning, until such time as it would be apparent to a reasonably prudent street car operator that the plaintiff was not going to stop or change the course of her direction and thus avoid coming into a position of imminent peril."

Instruction G is based on the evidence of the street car motorman, and does assume that "plaintiff was walking in a direction which, if continued, would" lead her "into a position of imminent danger." But we cannot appreciate how Instruction G could have been harmful to plaintiff, even if it does assume that she walked into danger, and this, because the humanitarian doctrine presupposes that plaintiff got into a place of danger. However, if the cause is retried, defendant will recast the second paragraph of Instruction G so as to avoid assumption. There is no merit to the claim that the instruction restricts the danger zone.

██ Defendant contends that Instruction No. 6 was properly refused on three grounds, viz.: (1) That plaintiff did not except to the failure of the court to include this refusal among the grounds for granting the new trial; (2) that the instruction is broader than the petition; and (3) that the failure to warn plaintiff of "intention to start the car" could not have been a proximate cause of her injury.

The fourth ground alleged in plaintiff's motion for a new trial is the refusal of her Instruction No. 6. It will be noted that the order granting the new trial was not based on *given* instructions, but "on account of error in instructions," but, assuming that the order was based on given instructions, defendant says that plaintiff cannot complain because she failed to except as above stated. As supporting this contention defendant relies on Manthey v. Kellerman Contracting Co. (en banc), 311 Mo. 147, 277 S. W. 927. In that case the verdict was for the defendant; plaintiff's motion for a new trial was sustained, and defendant appealed. In the course of the opinion the court said (311 Mo. 147, 277 S. W. l. c. 929): "In order that the respondent may have in the appellate court the benefit of the errors assigned in his motion, but not specified by the trial court as grounds for sustaining the motion, the record must show that respondent excepted at the time to the rulings, upon which, in his motion for a new trial, he predicated those assignments of error. The statement in the motion as of a fact, that plaintiff excepted to the giving of the instruction at the time given, is not evidence of the thing stated.'" The Manthey case was dealing with a situation where there was no *exception* to certain instructions, and not with such a situation as here.

In Schneider v. Terminal Railroad Assn. (en banc), 341 Mo. 430, 107 S. W. (2d) 787, the verdict was for plaintiff, defendant's motion for a new trial was sustained, and plaintiff appealed. In that case the court ruled (341 Mo. 430, 107 S. W. (2d) l. c. 791): "Defend-

ant contends that the order granting a new trial is sustainable on the ground, duly assigned in its motion for new trial, that the trial court erred in refusing its Instruction B. While this assignment was not specified of record by the court as a ground of its order granting a new trial, and was in effect overruled, defendant is entitled to invoke a review of other assignments of error in its motion for a new trial and have the order granting a new trial affirmed if it can be sustained upon such other ground," citing Sakowski v. Baird, 334 Mo. 951, 69 S. W. (2d) 649. Clearly, there is no merit to defendant's contention that plaintiff is in no position to complain of the refusal of her Instruction No. 6.

Was it proper to refuse Instruction No. 6 on the theory that it is broader than the petition? The petition alleged that defendant owned and operated "a double line of street railway tracks upon Grand Avenue over which it operates northbound and southbound street cars; that the defendant likewise owns a double line of street railway tracks upon Tenth Street over which it operates eastbound and westbound street cars; that the defendant also has curves and switches connecting its tracks on both of said streets over which it operates street cars from one street to the other."

Plaintiff's refused Instruction No. 6 follows: "The court instructs the jury that if you believe and find from the evidence that at all the times mentioned in evidence Grand Avenue and Tenth Street were intersecting public streets in Kansas City, Missouri; that Grand Avenue extended north and south and Tenth Street extended east and west, and that defendant operated street cars upon and over tracks laid approximately in the center of both streets; *and if you further believe and find from the evidence that the track used by south bound cars on Grand Avenue was connected with the east bound track on Tenth Street by a sharply curved switch track, and that the rear end of said street cars going upon and through said curve from south on Grand Avenue to east on Tenth Street extended out dangerously beyond the rails of said track,* if so; and if you further believe and find from the evidence that on the 4th day of February, 1935, plaintiff took a position in close proximity to the side of a stationary street car of defendant, facing south on Grand Avenue, and that defendant saw, or by the exercise of ordinary care, could have seen that plaintiff was reasonably likely to be struck by the rear end or overhang of said street car if the same were started and moved through said curved track from south on Grand Avenue to east on Tenth Street; that notwithstanding such knowledge or means of knowledge of plaintiff's position, if so, and that the same was dangerous to plaintiff (if you so find the facts to be), defendant, its agent, servant and employee in charge of said street car carelessly and negligently started said street car in motion *and* proceeded to drive it into and upon said curved track from south on Grand Avenue to east on Tenth Street

without giving plaintiff any warning of the movement of said street car (if you so find) and that as a direct result thereof, plaintiff was struck by the rear end or overhang of said street car, and she thereby suffered injury to her person (if so), then your verdict will be in favor of plaintiff and against defendant, provided you find and believe from the evidence that plaintiff was at all times in the exercise of ordinary care for her own safety'' (italics ours).

It appears that defendant introduced a plat showing the track connections and the curve and defendant's witness, Pugh, its employee and a civil engineer, explained, in detail, the track connections, curves, overhang, etc., at the turn. If the instruction is broader than the petition, which point we do not rule, defendant is precluded from complaining because of the rule that a defective petition will be considered as amended by pertinent evidence that goes in without objection. [Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S. W. (2d) 723, 1. c. 726, and cases there cited.]

As stated, defendant contends that Instruction 6 was properly refused because the failure to warn plaintiff of the "intention to start the car" could not have been a proximate cause of her injury. It will be noted that the instruction not only required a finding that the motorman negligently *started* the street car, but also required a finding that he negligently "proceeded to drive it into and upon said curved track . . . without giving plaintiff any warning," and these two requirements were submitted in the conjunctive.

Defendant does not urge that plaintiff did not make a submissible case on primary negligence, but plaintiff calls our attention to Laurent v. United Rys. Co. (Mo.), 191 S. W. 992. In the Laurent case it appears that the defendant maintained a station on the north side of Easton Avenue (St. Louis). The street car tracks came from the north into Easton and turned east. The defendant also maintained a sidewalk on the south side of the station, which sidewalk extended within two or three feet of the street car track. Plaintiff and others were at the station for the purpose of boarding a street car, and while she was standing on this sidewalk, the end of a street car, in making the turn, extended out over the sidewalk some two or three feet and struck her. The evidence "showed that the end of the car, in making the curve at the point of the injury, projected for a distance of five or more feet over the rail nearest to said sidewalk upon which plaintiff was standing; also that plaintiff had no previous knowledge or notice of that fact." Verdict went for the defendant. On appeal the judgment was reversed and cause remanded because of error in defendant's instruction, and not because a submissible case was not made.

State ex rel. Siegel v. Daues et al., 318 Mo. 256, 300 S. W. 272, was in certiorari and sought to quash the opinion of the St. Louis Court of Appeals in Siegel v. Wells, Receiver (Mo. App.), 287 S. W. 775.

The Siegel case, like the Laurent case and the present case, was to recover damages for injuries resulting from being struck by the rear overhang of a street car in making a turn, and was submitted solely on the humanitarian doctrine. Plaintiff recovered, but the Court of Appeals held that the plaintiff failed to make a case under the humanitarian doctrine and reversed the judgment. State ex rel. Siegel v. Daues et al., supra, quashed the opinion of the Court of Appeals, and in the course of the opinion, cited, with approval, the Laurent case. It is true that the Laurent case was submitted on primary negligence only, and the Siegel case on humanitarian negligence only. However, when the facts justify, both primary and humanitarian negligence may be submitted. [Bumgardner v. St. Louis Pub. Serv. Co., 340 Mo. 521, 102 S. W. (2d) 594; Montague et al. v. Missouri & K. I. Railroad Co. et al., 305 Mo. 269, 264 S. W. 813, l. c. 817, and cases there cited.]

In the situation, we think that plaintiff made a submissible case on primary negligence, as predicated in Instruction No. 6 (Haley v. Mo. Pac. Ry. Co., 197 Mo. 15, l. c. 25, 93 S. W. 1120; Williams v. St. Louis Pub. Serv. Co., supra, 335 Mo. 335, 73 S. W. (2d) l. c. 203), hence it was error to refuse plaintiff's Instruction No. 6. The order granting a new trial should be affirmed and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by Bradley, C., is adopted as the opinion of the court. All the judges concur.